# The Law Office of
# Bertram C. Okpokwasili

121 Newark Avenue, Suite 518
Jersey City, N.J. 07302
Telephone: (201) 771-0394
Fax: (201) 839-3352

Bertram C. Okpokwasili, Esq.*
_____
* Member of the New York Bar and New Jersey Bar

**September 09, 2019**

**Request to file under seal**
**VIA EMAIL**
The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

**United States v. Fernando Gomez Latorre, 16 Cr. 387 (JMF)**

To the Honorable Judge Jesse Furman,

    Defense counsel is respectfully requesting this letter be filed under seal ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ .

    I write in response to the Court's August 13, 2019 order regarding whether a Fatico hearing is necessary to resolve the parties' disagreements with respect to the applicable Guidelines range and the Government's September 3, 2019 letter to the Court. Respectfully, the defense is leaning against having a Fatico hearing at this point unless the Court finds it necessary. I believe that although there is a standing legal disagreement between the parties on whether the U.S.S.G. § 2D1.1(b)(1) enhancement applies, the parties appear to agree on the facts that Mr. Gomez ▬▬▬▬▬▬ allocated in his plea and agreed to in the plea agreement.

    The commentary to section 2D1.1(b)(1) states that two levels should be added for possession of a firearm "unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 comment. n.3.  Second Circuit "case law indicates that once the government has established that a weapon's presence was reasonably foreseeable to the defendant during conduct (i.e., the storage and cutting of drugs) relevant to the offense (i.e., distribution of drugs) at issue, the enhancement will apply, unless the defendant demonstrates that it is clearly improbable that the weapon was connected with the drug offense." United States v. Smith, 215 F.3d 237, 241 (2d Cir. 2000). See United States v. Melendez, 2005 U.S. Dist. LEXIS 12038, at 14-15 (S.D.N.Y. June 13, 2005). "[S]pecific offense characteristic of weapons possession during a narcotics offense is governed by the relevant-conduct guideline." See U.S.S.G. § 1B1.3(a)(ii); United States v. Quintero, 937 F.2d 95, 97 (2d Cir. 1991); United States

v. Pellegrini, 929 F.2d 55, 56 (2d Cir. 1991) (per curiam). See United States v. Sweet, 25 F.3d 160, 162 (2d Cir. 1994)

Under the Guidelines, a member of a scheme or conspiracy may be held liable for "all acts and omissions of others that were...(i) within the scope of the jointly undertaken criminal activity (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a) (1)(B). In order to hold a defendant accountable for jointly undertaken criminal activity, a court must find first "that the acts were within the scope of the defendant's agreement" and second "that they were foreseeable to the defendant." United States v. Studley, 47 F.3d 569, 574 (2d Cir. 1995).

With offenses that involve "aggregate harms", such as drug offenses, relevant conduct consists of all "acts and omissions * * * that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); see Pellegrini, 929 F.2d at 56. United States v. Sweet, 25 F.3d 160, 162-63 (2d Cir. 1994)

Defense counsel would argue that the facts in the present case are distinguishable from the facts in United States v. Ryan, 2019 WL 3849549 (2nd Cir. Aug. 16, 2019). In Ryan, the Government states " the enhancement applied because the defendants sold a large quantity of heroin to a confidential informant a week before the defendants sold the same informant a shotgun." That shotgun was part of the initial deal and the defendant in Ryan forgot it and offered more drugs to the buyer in exchange for forgetting.

To satisfy U.S.S.G. § 2d1.1(b)(6) the Government would need to show "that a weapon's presence was reasonably foreseeable to the defendant during conduct (i.e., the storage and cutting of drugs) relevant to the offense (i.e., distribution of drugs) at issue, … unless the defendant demonstrates that it is clearly improbable that the weapon was connected with the drug offense." United States v. Melendez, 2005 U.S. Dist. LEXIS 12038, at 14-15 (S.D.N.Y. June 13, 2005) (Where 2D1.1 enhancement did not apply where Defendant, involved in drug trade, fired pistol in self-defense as activity was not connected to drug dealing activity.) See United States v. Monk, 418 Fed. Appx. 5; 2011 U.S. App. LEXIS 7475, No. 09-3618-cr (2d Cir. April 11, 2011) (The circuit agreed that this evidence, although it proved that "Monk at some point possessed a gun," failed to "establish the necessary connection between the gun and the offense conduct" and that to affirm the enhancement on these facts would "be expanding [its] scope … in an unprecedented manner.")   In this case, I do not believe the Government has met its burden.

Mr. Gomez did not sell his personal pistols to Mr. Diaz in furtherance of a crime or in connection with a crime. Mr. Gomez, as former marine, was a pistol aficionado and would trade guns with fellow officers, friends and family often.  While living in Evanston, he travelled to Puerto Rico 3 or 4 times a year, for approximately 3 days at a time to vacation with his family and self-medicate by drinking with family and friends.  Apparently, a sporting culture in relation to pistols, existed in Puerto Rico at the time. During these trips Mr. Gomez would go to the

shooting range with his family members and so Mr. Gomez would travel with his personal pistols. Mr. Gomez met Mr. Diaz around 2007. Mr. Diaz was the Godfather to Mr. Gomez's brother in law and sister's son, Mr. Gomez's nephew and so Mr. Diaz for a short time was treated as family.

The government makes an argument citing the purchase alone by Mr. Diaz, a known drug dealer, as proof of its only burden and submits an attenuated "in connection with" nexus with the overall conspiracy with little factual details that accompany the typical 2D1.1 analysis. However, the Government has not outlined any specific drug trafficking activity as noted in the cases above connecting Mr. Gomez's personal pistols to Mr. Diaz's drug trafficking activity. Approximately around 2008, when Mr. Diaz requested Mr. Gomez's brother-in-law let Mr. Gomez know Mr. Diaz was interested in Mr. Gomez's personal pistols, Mr. Gomez agreed as Mr. Diaz stated it would be for his personal use for him and his wife. More importantly, Mr. Gomez requested and received the return of one his pistols from Mr. Diaz after Mr. Gomez found out that Mr. Diaz, hurting for money at the time, sold one of the pistols to the bar owner who leased space from Mr. Gomez's brother-in-law. Mr. Gomez never sold any pistols to Mr. Diaz after that.

Respectfully Submitted,

/s/ *BCO*

Bertram C. Okpokwasili, Esq.

CC: AUSAs Jordan Estes, Lara Pomerantz, Allison Nichols, Andrew Thomas

---

Counsel is reminded to follow the Court's Individual Rules and Practices when seeking leave to file something under seal or in redacted form. In this case, there is no basis to file this letter under seal --- though, out of an abundance of caution, the Court will publicly file it only in redacted form. (The Clerk of Court is directed to file and maintain the unredacted version under seal.) Further, given that neither party requests a Fatico hearing, the Court does not plan to hold one (although it may decide to do so after reviewing the parties' sentencing submissions). SO ORDERED.

September 10, 2019